```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD JONES,                   :   CIVIL ACTION
                                :   NO. 06-4739
          Plaintiff,            :
                                :
     v.                         :
                                :
                                :
NATIONAL RAILROAD PASSENGER     :
CORPORATION (AMTRAK),           :
                                :
          Defendant.            :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            APRIL 10, 2008

      Plaintiff, Ronald Jones, filed this Title VII claim pursuant to 42 U.S.C. § 2000e et seq, alleging that his former employer, Amtrak, suspended and eventually terminated his employment on account of his race[1] and in retaliation for filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in April of 2006. The defendant has filed a motion for summary judgment. The motion will be granted.

I.    FACTUAL BACKGROUND

      Mr. Jones had been employed with Amtrak since 1979 in various capacities. Throughout the course of his employment, Mr. Jones was subjected to an astonishing number of disciplinary

---

1. Both parties refer to the plaintiff as black.

actions due to an inability to timely report to work.[2] The following is a list of attendance problems for which the plaintiff was disciplined since 2004:[3]

| Tardy/Left Early | Absent |
|---|---|
| 2005<br>July 20<br>July 24<br>July 26<br>July 31<br>August 3<br>August 4<br>August 8<br>August 10<br>August 11<br>August 14<br>August 15<br>August 16<br>December 8<br>December 15<br><br>2006<br>January 3<br>January 5<br>January 8<br>January 24<br>February 13<br>February 14<br>February 16<br>February 20 | 2004<br>July 7<br>July 9<br>July 16<br>July 22<br>July 28<br>August 4<br>August 10<br>August 13<br>August 20<br>September 22<br>October 20<br>October 23<br>October 29<br>November 5<br>December 11<br>December 14<br>December 30<br><br>2005<br>January 7<br>February 1<br>February 12<br>July 21<br>July 27<br>August 1<br>December 1<br>December 13<br>December 18<br>December 28<br><br>2006<br>January 11<br>January 31<br>February 12 |

---

2. Mr. Jones admitted that he had a history of disciplinary issues at Amtrak "from day one." Jones Dep. 100:3, Jun. 12, 2007.

3. The Court will assume that the instances of lateness and absence, mentioned below, for which the plaintiff was disciplined were in addition to those for which the plaintiff was excused, i.e., due to sickness, vacation, etc.

Def. Mem. Summ. J. Ex. D-J.  Because of the above violations, Mr. Jones received periodic "notices of intent to discipline" in which Amtrak would outline the relevant portions within the Amtrak "Standards of Excellence" and "National Attendance" policies that Mr. Jones was accused of violating, and on what occasions the violations occurred.[4]  See id., Exs. D-I.

On each of the eight occasions[5] when Mr. Jones received such a notice, he signed a waiver of his right to an investigation and accepted the punishment without argument, usually in the form of a term of suspension.  Id. Exs. D-J.  On August 25, 2005, plaintiff received a notice similar to the ones that he had received previously.  However, this notice read that the violation served as a "full and final warning that subsequent violations of the attendance policy, Standards of Excellence, or Amtrak/TCU Labor agreement, may result in . . . termination from service to the corporation."  Id. Ex. H.  Thereafter, and notwithstanding this notice, plaintiff was late, absent or left early a total of 17 times from December of 2005 to February of 2006.  A disciplinary hearing was held on May 11, 2006, and the

---

4. Notices are deemed necessary when an employee is absent and/or tardy three times in the span of a month, five times in the span of 90 days, or 11 or more times in a 12 month period. Pl.'s Mem. Opp. Summ. J. Ex. O, 14:2-8.

5. The exhibits submitted by defense counsel include only those notices given after 1998.

plaintiff was terminated a week later for excessive absenteeism. Id. Ex. S; Pl.'s Mem. Opp. Summ. J. Ex. O.

On May 26, 2006, Mr. Jones filed a charge with the EEOC alleging that his recent termination was in retaliation for his filing of a previous EEOC charge on April 17, 2006.[6] The proceedings with the EEOC have since concluded and Mr. Jones has filed the instant suit.

II. DISCUSSION

    A.    Standard of Review

A court may grant summary judgment when "the pleadings, the discovery and the disclosure materials on file, and any

---

6. In total, Mr. Jones has filed three charges with the EEOC; one on April 8, 2003, one on April 17, 2006, and most recently on May 26, 2006. In connection with his April 8, 2003, EEOC charge, Jones had also filed a lawsuit in this District, along with five other plaintiffs, alleging racial discrimination against Amtrak. Judge Legrome Davis granted defendant's motion for summary judgment in that case on the basis that plaintiffs had failed to submit "any" evidence to substantiate their claims. Allen v. Amtrak, 2005 U.S. Dist. LEXIS 19624, *47 (E.D. Pa. Sep. 6, 2005). The Third Circuit affirmed the decision on January 31, 2007. Allen v. Amtrak, 228 F. App'x 144 (3d Cir. Jan. 31, 2007). The Court takes note of the Third Circuit's chastising of plaintiffs' counsel in the Allen matter, the same counsel who represents the plaintiff presently. There, the Court of Appeals pointed to counsel's failure to perform sufficient legal analysis in his brief in opposition to summary judgment and admonished counsel for his "numerous discovery violations." 228 F. App'x 144, *14, (3d Cir. Jan 31, 2007). Here too, the Court has been "underwhelmed" by counsel's performance. See id. Not only was the defendant obligated to file two meritorious motions to compel because of plaintiff's reluctance to cooperate during the discovery process, but again, counsel's legal submissions to the Court were not helpful.

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007). One cannot create an issue of fact merely by submitting an affidavit denying averments in conflicting affidavits without producing any supporting evidence of the denials. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (assessing a Title VII claim at the summary judgment stage); Miller v. Yellow Freight Sys. Inc., 758 F. Supp. 1074, 1077 (W.D. Pa. 1991) (citing Sola v. Lafayette Coll., 804 F.2d 40, 45 (3d Cir. 1986) (holding a plaintiff's conclusory statements are insufficient to create a material issue of fact where discrimination claim was based upon an employment contract).

       B.    <u>Discrimination Claim</u>

Title VII protects employees from being discriminated against by their employers on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. To prevail on a claim for racial discrimination based on indirect evidence,[7] an employee may rely upon the three-step burden shifting analysis under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). First, a plaintiff must establish a prima facie case for racial discrimination. <u>Id.</u> at 802. Fulfilling this requirement will create the presumption of unlawful discrimination. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993).[8] Then, the burden of production shifts to the defendant to set forth a legitimate, non-discriminatory reason for its action.[9] <u>McDonnell Douglas</u>, 411 U.S. at 803. Upon the stating of such a reason by the defendant, the plaintiff must then show that the defendant's stated reason for the adverse employment action was merely a pretext for discrimination. <u>Id.</u> at 804. In this instance,

---

7. In this case, the plaintiff does not claim that he has direct evidence of discrimination. <u>Fasold v. Justice</u>, 409 F.3d 178, 184 (3d Cir. 2005) (explaining that without direct evidence of discrimination, a plaintiff must proceed under the <u>McDonnell Douglas</u> framework).

8. Although the <u>McDonnell Douglas</u> framework shifts the burden of production to the defendant, the ultimate burden of persuasion always remains with the plaintiff. <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

9. An employer's burden of producing non-discriminatory reasons for its actions is relatively light. <u>Fuentes</u>, 32 F.3d at 763.

plaintiff's inability to establish a prima facie case renders the second and third prongs of the McDonnell Douglas paradigm moot.

1. Prima Facie Case

To satisfy the first step of the 3-part McDonnell Douglas model, a plaintiff must show the following: (1) he is a member of a protected class; (2) he was qualified for the position he held or sought; (3) he suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of his termination give rise to an inference of discrimination. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999).

Mr. Jones has failed to satisfy his burden of proving a prima facie case for discrimination under Title VII. While it is clear that he is a member of a protected class (prong 1) and that he suffered an adverse employment action (prong 3), and even assuming that he could adequately perform the work to which he was assigned (prong 2),[10] the plaintiff has failed to demonstrate that other similarly situated individuals, who are not members of the protected class, were treated differently (prong 4).

---

10. Mr. Jones has not submitted any evidence that he was qualified for his job. However, the Court's decision to grant summary judgment on other bases renders this omission inconsequential.

In this case, the record is devoid of the attendance records of any other similarly situated employees, black or otherwise.  And, there is no evidence of how these employees were disciplined or how the discipline differed from that imposed upon Mr. Jones.  In fact, at his deposition, Mr. Jones admitted that he could not offer any evidence of white employees being treated differently that he was.  Jones Dep. 74:10-11, Jun. 12, 2007.  Other than his averment that, "there were other people in my situation [not] dismissed for the same violations I was dismissed for," id. at 74:3-9, Mr. Jones offered no evidence to substantiate the claim.

In his opposition to the defendant's motion for summary judgment, and for the first time, Mr. Jones refers the Court to his April 17, 2006 EEOC claim in which he alleges that two white employees,[11] Dan Callahan and David Ward, were similarly situated white employees who were not disciplined as severely as he was.[12]  Pl.'s Mem. Opp. Summ. J. 4.  To this date, plaintiff has submitted no evidence of either employee's attendance history or

---

[11]. The defendants allude to a third white employee, Jim McKenna, mentioned only in the Jones' May, 2006 EEOC claim, upon whom they claim the plaintiff bases his claims of disparate treatment.  The Court has not come across such a person in any of the plaintiff's filings.

[12]. The amended complaint, filed four years after the first EEOC charge, makes no mention of these two employees but rather refers to "similarly treated white employees" in general.  In fact, the only instance where their names were mentioned was in the April 17, 2006 EEOC charge.

the level of discipline to which those employees were subjected for the alleged similar infractions.[13]

As for his own attendance problems, with regard to the most recent allegation of wrongdoing, which ultimately lead to his dismissal, Mr. Jones took no exception to the evidence offered against him at his hearing and even stated, "I understand the Attendance Policy and I understand that you have to, you know, we have to enforce it."  Pl.'s Mem. Opp. Summ. J. Ex. O, 23:1-2.  Also at that time, with the potential for termination looming, Mr. Jones declined to make any mention of his belief that the discipline he suffered was race driven when given the opportunity to add his comments to the record.  Id.

Remarkably similar to this case are the facts in Boice v. SEPTA, 2007 U.S. Dist. LEXIS 74566 (E.D. Pa. Oct. 5, 2007).  There, the plaintiff filed a discrimination claim against his employer, also a transit company, arguing that the motivation for the discipline he received, culminating in his termination, was racial discrimination.  The Court found that while the plaintiff had demonstrated that he was a member of a protected class and that he had suffered an adverse employment action, he had failed to show that he was discharged under circumstances that give rise

---

13. Additionally, during his deposition, Mr. Jones also referenced another Amtrak employee, Steve Rice, who Jones testified would come into work late on occasion.  Mr. Jones offered no information as to what extent Mr. Rice was disciplined beyond the verbal reprimands Mr. Jones believed Mr. Rice had received.

to an inference of discrimination, and thus could not establish a prima facie case. Boice at *28. There too, the plaintiff had an "extensive" and "notable" disciplinary record, id. at *29, and could not offer any substantial evidence that the other similarly situated employee had committed the same infractions.[14]

Mr. Jones points to deposition testimony of certain Amtrak employees who were unable to recall other employees being discharged for excessive absenteeism.[15] However, even assuming that Mr. Jones were in fact the only employee of Amtrak to have ever been fired for excessive absenteeism, he would still bear the burden of showing that the other similarly situated employees at Amtrak exhibited the same level of absenteeism but were not dismissed.[16]

---

14. Unlike Mr. Jones, Mr. Boice was at least able to refer to another employee of the company by name in the complaint who was treated differently than he was, and, was even able to testify as to the actual infractions committed by the other employee that should have given rise to some form of discipline. Id. at *25-7.

15. See, e.g., Pl.'s Mem. Opp. Summ. J. 2.

16. Even had the plaintiff been able to establish a prima facie case, he would have been unable to rebut Amtrak's proffered reason for his termination, namely, his absences. To do so, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. To that end, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer

Plaintiff has failed to produce evidence that any similarly situated employee of Amtrak was treated differently than he was. For this reason summary judgment will be granted in favor of the defendant on the plaintiff's discrimination claim.

### C.   Retaliation Claim

Retaliation in an employment context is analyzed under the same burden-shifting rubric as used for discrimination claims. Shellenberger v. Summit Bancorp, 318 F.3d 183 (3d Cir. 2003); Waddell v. Small Tube Products Inc., 799 F.2d 69, 73 (3d Cir. 1986). To succeed in making a prima facie case in a retaliation claim, however, a plaintiff must show, 1) that he was engaged in a protected activity, 2) that his employer took adverse action against him and, 3) that a causal link exists between the protected activity and the employer's adverse action. Marra v. Phila. Hous. Auth., 497 F.3d 286 (3d Cir. 2007). Failure to produce evidence of any one of these elements provides a proper basis for granting summary judgment. Jalil v. Advel Corp., 873 F.2d 701, 708 (3d Cir. 1989).

---

that the employer did not act for [the asserted] non-discriminatory reasons." Id. at 765 (emphasis in original); Chauhan v. Alfieri, 897 F.2d 123, 128 (3d Cir. 1990) (holding that a plaintiff cannot simply argue that the reasons offered by the employer are false, but need adduce evidence directly contradicting the offered reasons either). Such a showing must be made by a preponderance of the evidence. Fuentes, 32 F.3d at 763. The plaintiff would be unable to clear this hurdle.

In order to show that a plaintiff was terminated because of his engaging in a protected activity, a plaintiff need not prove that retaliation was the sole reason for the employer's decision; he must prove, however, that it was a determinative factor of the employment decision, meaning that he would not have been terminated but for his protected activity. Leboon v. Lancaster Jewish Cmty. Ctr. Assn., 503 F.3d 217, 232 (3d Cir. 2007); Watson v. SEPTA, 207 F.3d 207, 215 (3d Cir. 2000). Although the Court recognizes that the plaintiff has satisfied the first two requirements under the traditional retaliation claim, he falls short in fulfilling the third. See Leboon, 503 F.3d at 232.

"A broad array of evidence" should be considered when assessing whether such a causal link has been shown to survive a summary judgment motion. Farrell v. Planters Lifesavers Co., 206 F.3d 217, 285 (3d Cir. 2000). When the temporal proximity between the protected activity and the adverse action is "unusually suggestive," that alone can create an inference of causality. Clark Cty. School Dist. v. Breeden, 532 U.S. 268, 273 (2001). However, there is no bright-line rule for establishing whether such a proximity is "unusually suggestive." Leboon, 503 F.3d at 233. Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001) (affirming that while no bright-line rule exists, temporal proximity must be very close); Fasold v. Justice, 409 F.3d 178,

189 (3d Cir. 2005) (holding that three months might suffice to demonstrate a causal link; Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (holding that a period of two days could demonstrate a causal link); but see Aguiar v. Morgan Corp., 27 F. App'x 110A, 113 (3d Cir. Jan 23, 2003) (eight months between activity and termination is insufficient temporal proximity); Bedford v. Southeastern Pa. Transp. Auth., 867 F. Supp. 288 (E.D. Pa. 1994) (six months is insufficient).  In this case, Mr. Jones filed the relevant EEOC claim on April 17, 2006.  He was terminated approximately one month later on May 18, 2006, following a hearing held the prior week.  Under these circumstances, the Court concludes that the two events could be considered temporally connected.

However, even when a close temporal proximity exists, a plaintiff will still be required to show that the defendant decision maker had knowledge of the protected activity.  Moore v. City of Philadelphia, 461 F.3d 331, 351 (3d Cir. 2006) (citing Jalil, 873 F.2d at 708) ("[Plaintiff] demonstrated the causal link between the two by the circumstance that the discharge followed rapidly, only two days later, upon [defendant's] receipt of notice of [plaintiff's] EEOC claim.")) (emphasis added); Kachmar v. SunGard Data Sys. Inc., 109 F.3d 173, 178 (3d Cir. 1997) (holding that temporal proximity itself is not an element of plaintiff's prima facie case, but merely provides an

evidentiary basis from which an inference can be drawn); <u>Ambrose v. Twp. of Robinson</u>, 303 F.3d 488, 494 (3d Cir. 2002) (temporal proximity cannot be used to show that an employer was aware of the protected conduct in the first place); <u>Fitchett v. Stroehmann Bakeries, Inc.</u>, 1995 U.S. Dist. LEXIS 13862, * 12 (E.D. Pa. Sept. 20, 1995) (granting summary judgment on plaintiff's relatiation claim after plaintiff failed to submit evidence that defendants had knowledge of his EEOC charge).

In this case, Mr. Jones has produced no evidence that Mr. Thomas Kane, the decision maker responsible for Jones' termination, knew that Mr. Jones had filed his April 17, 2006, EEOC charge. In fact, at Mr. Jones deposition, Mr. Jones conceded that he had never reported the filing of his April 17, 2006, EEOC charge to Mr. Kane. Jones Dep. 148:17, Jun. 12, 2007. Nor has Mr. Jones produced sufficient evidence to suggest that Mr. Kane would have learned of the filing through any other means. <u>See</u> <u>Fitchett</u>, 1995 U.S. Dist. LEXIS 13862, *12 (recognizing the importance of plaintiff's admission that he had not informed his supervisors that he had filed an EEOC charge).

The extent of Mr. Jones' proof concerning Mr. Kane's knowledge of Mr. Jones' EEOC filing on April 17, 2006, consists of quoting, verbatim, his May 26, 2006, EEOC charge and following it with this argument;

> "Using smoke and mirrors, in Paragraphs 42 to 64 of its supposedly "Undisputed Facts" Amtrak pretends that its

-14-

> discharge of the plaintiff was temporally too far removed from the pending appeal in the employment discrimination action Mr. Jones had filed against Amtrak and from the EEOC charge he had filed a month earlier to be causally related to that charge and suit.  Amtrak's attempted magic trick does not work."

Pl.'s Mem. Opp. Summ. J. 14.  As discussed above, this argument misses the point; unless Mr. Kane knew of the April 17, 2006, EEOC charge filed by Mr. Jones before the adverse employment action, demonstrating only that the events were temporally near one another is insufficient.

Plaintiff has failed to produce sufficient evidence that the decision-maker was aware that Mr. Jones had filed the April 17, 2006, charge with the EEOC when the decision was made to terminate Mr. Jones' employment.  For these reasons, summary judgment shall be granted with respect to the plaintiff's retaliation claim.

III.    CONCLUSION

At this late stage in the proceeding, the plaintiff has relied only upon conjecture and hypothesis as to why he suffered disciplinary action.  For the above reasons, judgment will be entered in favor of the defendant and against the plaintiff.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD JONES,                    :    CIVIL ACTION
                                 :    NO. 06-4739
           Plaintiff,            :
                                 :
      v.                         :
                                 :
NATIONAL RAILROAD PASSENGER      :
CORPORATION (AMTRAK),            :
                                 :
           Defendant.            :
```

ORDER

**AND NOW**, this **10th** day of **April, 2008,** it is hereby **ORDERED** that the case shall be returned to the active docket.

**IT IS FURTHER ORDERED** that for the reasons stated in the accompanying Memorandum, that Defendant's motion for summary judgment against Plaintiff (doc. no. 43) is **GRANTED.**

      **AND IT IS SO ORDERED.**

      <u>s/Eduardo C. Robreno</u>
      **EDUARDO C. ROBRENO, J.**

-16-